UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UCF I TRUST 1,
  Plaintiff,

  v.

JOHN J. DIMENNA, JR.,
THOMAS L. KELLY, JR., and
WILLIAM A. MERRITT, JR.,
  Defendants.

No. 16-cv-00156 (VAB)

## RULING ON PENDING MOTIONS

  Plaintiff, UCF I Trust I ("UCF"), initiated this action against Defendants, John J. DiMenna, Jr., Thomas L. Kelly, Jr., and William A. Merritt, Jr., on February 2, 2016, seeking to recover 22,525,400, allegedly owed for certain loans in default and to enforce guarantee obligations allegedly made by these three defendants. Pending are Plaintiff's Motion for Prejudgment Remedy [Doc. No. 8], Motion for Disclosure of Assets [Doc. No. 11], Amended Motion for Prejudgment Remedy [Doc. No. 41], and Motion for Default on the Amended Motion for Prejudgment Remedy as to Defendant DiMenna [Doc. No. 49].

  Plaintiff's Motion for Prejudgment Remedy is MOOT because Plaintiff's Amended Motion for Prejudgment Remedy has superseded it. Plaintiff's motion for default against Defendant DiMenna on the Amended Motion for Prejudgment Remedy is GRANTED because Defendant DiMenna has been properly served and not only has failed to respond to the Amended Motion for Prejudgment Remedy but also has had a default entered against him in the case for his failure to appear at all. *See* Doc. No. 65. Consequently, Plaintiff's Amended Motion for Prejudgment Remedy as to Defendant DiMenna is also GRANTED. However, since Defendant DiMenna's failed to appear in this case and because the Court may only issue such an order as to

1

"an appearing defendant," Conn. Gen. Stat.§ 52-278n(a), Plaintiff's Motion for Disclosure of Assets is DENIED as to Defendant DiMenna.

Plaintiff's Amended Motion for Prejudgment Remedy as to Defendants Kelly and Merritt is GRANTED, as modified by the Court, because, for the reasons discussed below, the Court finds probable cause that a judgment in the amount of $555,074.30 as to Defendant Kelly and $724,883.56 as to Defendant Merritt will be rendered in favor of Plaintiff. Accordingly, Plaintiff's Motion for Disclosure of Assets is GRANTED as to Defendants Kelly and Merritt.

## I.   LEGAL STANDARD

Rule 64, Fed. R. Civ. P., provides that, in a federal court, "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." "[A] prejudgment remedy is intended to secure the satisfaction of a judgment should the plaintiff prevail." *Roberts v. TriPlanet Partners, LLC*, 950 F. Supp. 2d 418, 420 (D. Conn. 2013). Connecticut law "provides for an expansive prejudgment remedy, and it is under Connecticut law that [a plaintiff's prejudgment remedy] application must be reviewed." *New England Health Care Employees Welfare Fund v. iCare Mgmt., LLC*, 792 F. Supp. 2d 269, 274 (D. Conn. 2011).

Under Connecticut law, a prejudgment remedy shall be granted if a court "finds that the plaintiff has shown probable cause that such a judgment will be rendered in the matter in the plaintiff's favor in the amount of the prejudgment remedy sought." Conn. Gen.Stat. § 52-278d(a).

> Proof of probable cause as a condition of obtaining a prejudgment remedy is not as demanding as proof by a fair preponderance of the evidence. The legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. Probable cause is a flexible common sense standard. It does not demand that a belief be correct or

more likely true than false.  Under this standard, the trial court's function is to determine whether there is probable cause to believe that a judgment will be rendered in favor of the plaintiff in a trial on the merits.

*TES Franchising, LLC v. Feldman*, 286 Conn. 132, 137 (2008) (quotation marks and citations omitted).

## II.     FINDINGS OF FACT

After considering all of the evidence presented, the Court finds the following facts for the limited purpose of deciding the Amended Motion for Prejudgment Remedy:

Defendants Kelly and Merritt first began working together in the 1980s.  Together, they formed Seaboard Realty, Inc., as a real estate investment company in approximately 1992.  They subsequently hired Defendant DiMenna to operate and manage the company's real estate, and gave him a 40% share in the company, later increased to a 50% share.

In January 1996, Defendants changed the structure of their company into a Connecticut limited liability company, Seaboard Realty, LLC.  At all relevant times, Seaboard Realty, LLC had three members: Defendant DiMenna, who owned 50 percent, Defendant Merritt, who owned 25%, and Defendant Kelly, who owned 25%.  The Seaboard Realty, LLC Operating Agreement requires a majority vote from its members on business decisions.  The three members of Seaboard Realty, LLC had regular meetings at which various issues regarding its properties were discussed.  Minutes were kept of these meetings.

Over the course of its existence, Seaboard Realty, LLC, through its affiliates, has had an ownership interest in a number of residential, commercial, and hospital properties, primarily located in Stamford, Connecticut.  Park Square West Associates, LLC, a Delaware limited liability company, purchased the apartment complex located at 101 Summer Street, Stamford, Connecticut for approximately $38 million, a purchase financed in part by an $8 million loan

from Titan Servicing, LLC.  The sole member of Park Square West Associates, LLC is Park Square West Member Associates, LLC, a Connecticut limited liability company with many investors as members.[1]  Seaboard Realty, LLC is the managing member and 25 percent owner of Park Square West Member Associates, LLC.

Seaboard Hotel Associates, LLC is a Delaware limited liability company and at all relevant times was the owner of the Marriott Courtyard Hotel located at 275 Summer Street, Stamford, Connecticut, which it had acquired for approximately $30 million.  The sole member of Seaboard Hotel Associates, LLC is Seaboard Hotel Member Associates, LLC, a Connecticut limited liability company with many investors as members.[2]  Seaboard Realty, LLC is the managing member and 25 percent owner of Seaboard Hotel Member Associates, LLC.

Seaboard Realty, LLC had no employees.  Seaboard Property Management, Inc., a company owned by Defendant DiMenna, handled the day-to-day operations of the various properties indirectly owned by Seaboard Realty, LLC, and received a fee for those services by the managed entities.  Defendants Merritt and Kelly had no ownership interest in Seaboard Property Management, Inc.

On November 1, 2012, Plaintiff made a mezzanine loan in the amount of $12 million to Park Square West Member Associates, LLC (the "PSW Mezzanine Loan").  On or about November 30, 2012, Plaintiff entered into a mezzanine loan with Seaboard Hotel Member Associates, LLC in the amount of $3.5 million (the "Courtyard Mezzanine Loan").  Prior to March 25, 2014, Park Square West Member Associates, LLC entered into a loan with Starwood Property Trust (the "Starwood Loan").  On or about March 25, 2014, Defendant DiMenna sought

---

[1] Defendant Merritt has an ownership interest in Park Square West Member Associates, LLC apart from his membership in Seaboard Realty, LLC.

[2] Defendants Kelly and Merritt have ownership interests in Seaboard Hotel Member Associates, LLC apart from their membership in Seaboard Realty, LLC.

4

to increase the PSW Mezzanine Loan from $12 million to $15.3 million (the "PSW Loan Modification"), allegedly to avoid the potential for Starwood Property Trust foreclosing on its mortgage securing the Starwood Loan.

To induce Plaintiff to enter into the PSW Loan Modification, personal repayment guarantees of both the PSW Mezzanine Loan, as modified, and the Courtyard Mezzanine Loan allegedly were signed by all three Defendants, DiMenna, Kelly, and Merritt.  The signatures of Defendants Kelly and Merritt on the guarantees, however, were forged by Defendant DiMenna. In fact, at the time, Defendants Kelly and Merritt were unaware of the existence of the PSW Mezzanine Loan, the Courtyard Mezzanine Loan, and the PSW Loan Modification.

Seaboard Realty, LLC and Defendants Kelly and Merritt received continuing returns on their investments in the Park Square West and Courtyard properties, even though these entities were operating at a loss.  Defendant DiMenna created a false set of accounting documents to deceive Defendants Kelly and DiMenna into believing these entities were nevertheless profitable.  Until sometime later, Defendants Kelly and DiMenna never verified the financial state of these entities through tax returns or other public filings that reflected the true state of these entities' financial affairs.

When these various loans matured and became due and owing, they could not be repaid. In late 2015 and early 2016, Seaboard Realty, LLC and a number of related entities filed chapter 11 petitions before the United States Bankruptcy Court for the District of Delaware.

## III. DISCUSSION

### A. UCF's Breach of Contract Claim

UCF has sued Defendants DiMenna, Kelly, and Merritt under a breach of contract theory for failure to fulfill the personal guarantees provided as part of the PSW Loan Modification.   No

party disputes that Defendant DiMenna signed these personal guarantees and that there are outstanding amounts due and owing on these loans. Indeed, Defendant DiMenna has failed to appear to contest anything in this lawsuit, despite being properly served. As a result, there is probable cause that Defendant DiMenna will be found to have breached his contractual obligations to UCF.

Defendants Kelly and Merritt, however, claim that they never signed the personal guarantees submitted on their behalf. UCF concedes that Defendant DiMenna forged their signatures and acknowledges that, at the time of this transaction, Defendants Kelly and Merritt were unaware of not only these guarantee obligations but also of the underlying loans themselves. UCF argues that, nevertheless, Defendants Kelly and Merritt ratified the guarantee obligations by their subsequent conduct, and thus are bound by them. The Court disagrees.

"As a general rule, ratification is defined as the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account. Ratification requires acceptance of the results of the act with an intent to ratify, and with full knowledge of all the material circumstances." *Cmty. Collaborative of Bridgeport, Inc. v. Ganim*, 241 Conn. 546, 560-61 (1997) (quotation marks and citation omitted). At the same time, "silence, as well as affirmative acts, may imply an intent to ratify." *Id.* at 561-62 (quotation marks and citation omitted). Implied ratification is "sometimes put upon the ground that ratification of the unauthorized act is presumed from failure to disaffirm." *Cohen v. Holloways', Inc.*, 158 Conn. 395, 408 (1969).

UCF urges the Court to recognize that the failure to discover DiMenna's allegedly fraudulent acts earlier constitutes ratification in this case. As Plaintiff views the law, Kelly and Merritt had "constructive knowledge" of DiMenna's acts and simply failed to conduct the type of

6

financial due diligence that would have uncovered his scheme before the fraud had taken hold or before too much of UCF's money had been expended. *See, e.g.*, *Diebold Found., Inc. v. C.I.R.*, 736 F.3d 172, 187 (2d Cir. 2013) ("Concluding that a party had constructive knowledge does not require a showing that the party had actual knowledge of a scheme; rather, it is sufficient if, based upon the surrounding circumstances, they 'should have known' about the entire scheme."). There is insufficient support in Connecticut law on ratification, however, to support the application of the constructive knowledge principle here.

As the Connecticut Supreme Court has made clear, "[i]ntention is an essential element in the doctrine of ratification." *Cmty. Collaborative of Bridgeport*, 241 Conn. at 563 n.8. Plaintiff has not adduced any evidence going to the intention of Defendants Kelly and Merritt to ratify the loans at issue. Instead, Plaintiff relies on the silent acceptance of the profits Defendants Kelly and Merritt received as a result of Defendant DiMenna's actions to imply their intent to ratify the loans and guarantees. *See id.* at 561-62 ("silence, as well as affirmative acts, may imply an intent to ratify"); *Cohen*, 158 Conn. at 408 ("sometimes . . . ratification of the unauthorized act is presumed from failure to disaffirm"). However, a finding of intent based on such grounds generally requires that the ratifier have had "a full and complete knowledge of all the material facts connected with the transaction to which it relates." *Cohen*, 158 Conn. at 408. In this case, Defendants Kelly and Merritt did not have actual knowledge of the loans and guarantees at issue. DiMenna's various acts, the forgery of their names, the maintenance of two sets of financial records (one of which was fictional), and the preparation of false documents for non-existent deals and from a bank, meant that neither Kelly nor Merritt had "full and complete knowledge" of the various financial transactions that DiMenna had undertaken on their behalf.

7

Accordingly, Plaintiff has failed to show probable cause that it will be awarded a judgment in this matter on its breach of contract claim.

### B.   Unjust Enrichment

Unjust enrichment is "a broad and flexible remedy," "[w]ith no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable." *Vertex, Inc. v. City of Waterbury*, 278 Conn. 557, 573 (2006). In order to recover for unjust enrichment, a plaintiff "must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." *Id*. "A claim for unjust enrichment is an equitable claim. In matters of equity, the court is one of conscience which should be ever diligent to grant relief against inequitable conduct, however ingenious or unique the form may be." *Town of New Hartford v. Connecticut Res. Recovery Auth.*, 291 Conn. 433, 459 (2009).

The essence of UCF's unjust enrichment claim is that it relied on the personal guarantees of Defendants Merritt and Kelly in entering into the PSW Loan Modification to UCF's detriment and these loan obligations have not been paid in accordance with their terms. Defendants Kelly and Merritt allegedly benefited from these loans because the funds provided as a result of these loan guarantees enabled distributions to be made to each of them. In any event, at this time, this Court will entertain a prejudgment remedy involving Plaintiff's unjust enrichment claim only to the extent that it includes the benefits to Defendants Merritt and Kelly accruing after the date of the guarantees, March 25, 2014.[3]

---

[3] Based on the evidence presented and the arguments raised at the prejudgment remedy hearings, it is not clear how a viable unjust enrichment claim could be brought against Defendants Merritt and Kelly for anything that occurred before March 25, 2014. This Court, however, need not address that issue now and only finds that the evidentiary standard of probable cause has not been satisfied and there is no basis to provide relief on this claim before March 25, 2014 at this stage of the proceedings.

Restatement (First) of Restitution § 1 provides, "A person who has been unjustly enriched at the expense of another is required to make restitution to the other."  Comment (a) to that section notes that a person is enriched if he received a benefit and is unjustly enriched if retention of that benefit would be unjust.  Comment (b) defines a benefit as being any form of advantage.

While the evidence shows that neither Merritt nor Kelly knew of the loan guarantees, the funds provided by these transactions supported their various real estate interests and resulted in these interests being able to make financial distributions, not otherwise possible.  In the relevant years, Defendant Merritt received $11,252 and $14,065 distributions from Seaboard Hotel Member Associates, LLC in 2014 and 2015, respectively, $692 from Park Square West Member Associates, LLC in 2014, and $329,378 and $369,496.56.from Seaboard Realty, LLC in 2014 and 2015, respectively.  Thus, there is probable cause to find that Defendant Merritt gained at least $724,883.56 in distributions after the PSW Loan Modification.

Defendant Kelly had his distributions from Seaboard Realty, LLC deposited with TLK Partners, LLC.  "Although unjust enrichment typically arises from a plaintiff's direct transfer of benefits to a defendant, it also may be indirect, involving, for example, a transfer of a benefit from a third party to a defendant when the plaintiff has a superior equitable entitlement to that benefit."  *Town of New Hartford v. Connecticut Res. Recovery Auth.*, 291 Conn. 433, 468 (2009); *see also Nat'l Waste Associates, LLC v. TD Bank, N.A.*, No. HHDX07CV106007649S, 2015 Conn. Super. LEXIS 2673, *21, 2015 WL 7421335, *7 (Oct. 22, 2015) (under Connecticut law, "a defendant can be liable in unjust enrichment for a benefit that was indirectly obtained")[4].

---

[4] In *National Waste Associates*, the court rejected a defendant's argument that it was entitled to summary judgment on an unjust enrichment claim because the plaintiff may not have directly conveyed that defendant a benefit.  The court held instead that there was sufficient evidence from which a fact finder could conclude that the defendant had benefitted from the existence of the co-defendant's waste transportation process because it helped to reduce the co-

Defendant Kelly testified that TLK Partners, LLC is an entity that holds all of his managing member interests in the Seaboard entities.  He further testified that he has the benefit of the interests held by TLK Partners, LLC.  Documentation in the record indicates that Defendant Kelly was the sole partner receiving distributions from TLK Partners, LLC.  *See, e.g.*, Pl. Ex. 52.  Thus, there is probable cause that the distributions from Seaboard Realty, LLC to TLK Partners, LLC constituted an indirect benefit to Kelly to the detriment of UCF, and that Defendant Kelly was thereby unjustly enriched by these distributions in the amounts of $209,673 for 2014 and $307,901.30 for 2015.

In addition, while Defendant Kelly is not independently a member of Seaboard Hotel Member Associates, LLC, the Thomas L. Kelly, Jr. Roth IRA is a member, and the evidence shows that it received distributions in 2015.  A Roth IRA is "a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries." 26 U.S.C. § 408(a); *see also* 26 U.S.C. § 408A(a), (b).  Defendant Kelly is the beneficiary of the Thomas L. Kelly, Jr. Roth IRA, *see, e.g.*, Pl. Ex. 50, and thus, he has received a benefit from Seaboard Hotel Member Associates, LLC's distributions to the IRA.  The documents produced into evidence show that these distributions totaled $37,500 for 2013 and $37,500 for 2015.  No documentation has been produced yet as to 2014.  Because, as discussed *supra*, only distributions after March 25, 2014 should be included in the restitution calculations for unjust enrichment at this stage, there is probable cause to find unjust enrichment to Defendant Kelly from the Seaboard Hotel Member Associates, LLC distributions in the amount of $37,500.

Finally, Defendant Kelly is not a member of Park Square West Member Associates, LLC, but TLK Seaboard Investments, LLC is.  Defendant Kelly testified that TLK Seaboard

---

defendant's maintenance costs, which in turn arguably could have benefitted the defendant because the contract between the defendant and co-defendant had financial incentives for the defendant to keep costs below certain benchmarks.  *See id.*

Investments, LLC is a trust fund set up for his wife, in which he has no interest.  There is no evidence to the contrary in the record.  Accordingly, there is no probable cause for the Court to find that Defendant Kelly was unjustly enriched by the distributions from Park Square West Member Associates, LLC to TLK Seaboard Investments, LLC.

In sum, there is probable cause to find that Defendant Kelly benefited from at least $555,074.30 in distributions after the PSW Loan Modification.

## IV.    DISCLOSURE OF ASSETS

Plaintiff has also moved for the disclosure of Defendants' assets under Conn. Gen. Stat. § 52-278n.  Section 52-278n(a) provides that "[t]he court may, on motion of a party, order an appearing defendant to disclose property in which he has an interest or debts owing to him sufficient to satisfy a prejudgment remedy."  Once a plaintiff has established probable cause to support a prejudgment remedy, such disclosure may be ordered by the court.  *See* Conn. Gen. Stat. § 52-278n(c); *see also Roberts*, 950 F. Supp. 2d at 426.

Here, for the reasons articulated above, Plaintiff has established probable cause to support a prejudgment remedy in the amount of $724,883.56 as to Defendant Merritt and $555,074.30 as to Defendant Kelly.  Therefore, Plaintiff's motion for disclosure of assets is granted as to Defendants Kelly and Merritt.  Within 30 days of this order, Defendants Merritt and Kelly shall disclose to Plaintiff money or property in which they have an interest, or debts owing to them, sufficient to provide security in the respective amounts of $724,883.56 and $555,074.30.

## V.    CONCLUSION

Plaintiff's Motion for Prejudgment Remedy [Doc. No. 8] is MOOT in light of its Amended Motion for Prejudgment Remedy [Doc. No. 41].

Plaintiff's Motion for Default as to Defendant DiMenna [Doc. No. 49] is GRANTED and consequently Plaintiff's Amended Motion for Prejudgment Remedy [Doc. No. 41] is GRANTED as to Defendant DiMenna in the amount of $22,525,400.  Plaintiff's Motion for Disclosure of Assets [Doc. No. 11] is DENIED as to Defendant DiMenna.

Plaintiff's Amended Motion for Prejudgment Remedy [Doc. No. 41] is GRANTED as to Defendant Kelly in the amount of $555,074.30 and as to Defendant Merritt in the amount of $724,883.56.  Plaintiff's Motion for Disclosure of Assets [Doc. No. 11] is also GRANTED as to Defendants Kelly and Merritt.

SO ORDERED at Bridgeport, Connecticut, this 29th day of June, 2016.


　　　　　　　　　　　　　　　　　　　　　　　　　__/s/ Victor A. Bolden_____
　　　　　　　　　　　　　　　　　　　　　　　　　Victor A. Bolden
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge