NCA INVESTORS LIQUIDATED TRUST,
  *Plaintiff*,
  v.

         No. 3:16-cv-156 (VAB)

JOHN J. DIMENNA, JR, THOMAS L.
KELLY, JR., & WILLIAM A. MERRITT,
JR.,
  *Defendants*.

## RULING AND ORDER ON MOTION TO DISMISS OR FOR SANCTIONS

NCA Investors Liquidated Trust ("NCA Investors Trust" or the "Plaintiff") has sued John

J. DiMenna, Jr., Thomas L. Kelly, Jr., and William A. Merritt, Jr. ("Defendants"), for breach of

contract and unjust enrichment to recover $18,800,000 allegedly owed from defaulted loans and

related enforcement obligations. Complaint, ECF No. 1.

Thomas L. Kelly, Jr. and William A. Merritt, Jr. ("Defendants") now seek to dismiss the

case or levy sanctions against NCA Investors Trust for the destruction of discovery documents

by an NCA Trustee. Motion for Sanctions, ECF No. 164.

For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** the

motion for sanctions.

To the extent Defendants seek dismissal, the Court denies the motion is **DENIES** the

motion without prejudice to renewal after the close of discovery.

To the extent that Defendants seek an adverse jury instruction with respect to their

affirmative defenses on NCA Investors Trust's unjust enrichment claim, the Court **DENIES** the

motion without prejudice to renewal at the time of trial.

To the extent that Defendants seek attorney's fees and costs related to any additional

discovery required because of the spoliation of evidence as well as associated with bringing this motion, the Court **GRANTS** the motion.

Defendants shall file any motion for attorney's fees and costs within **twenty-one (21) days** of the resolution of this case in this Court.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Allegations

NCA Investors Trust is a liquidated trust established during the *In re: Newbury Common Assocs., LLC*, Case No. 15-12507, Chapter 11 bankruptcy action. Third Amended Complaint, ECF No. 133 ("Third Am. Compl."), at ¶¶ 4, 8. DiMenna, Kelly, and Merritt are owners of Seaboard Realty, LLC ("Seaboard Realty"). *Id.* at ¶ 12. Mr. DiMenna owned fifty percent and Mr. Kelly and Mr. Merritt each owned twenty-five percent. *Id.* NCA Investors Trust alleges that Defendants, through their interests in Seaboard Realty, personally guaranteed approximately $18.5 million in loans for two separate projects: a $15,300,000 mezzanine loan to Park Square West Member Associates, LLC ("Park Square Guarantee") and a $3,500,000 mezzanine loan to Seaboard Hotel Member Associates, LLC ("Courtyard Guarantee"). *Id.* at ¶ 9.

#### 1.    Corporate Entities

Seaboard Realty owns 100% of PSWMA II, LLC ("PSWMA II"), which owns 100% of PSWMA I, LLC ("PSWMA I"). *Id.* at ¶¶ 12, 13. PSWMA I owns 100% of Park Square West Member Associates, LLC ("Park Square Borrower"). *Id.* at ¶ 13. Park Square Borrower owns 100% of non-Debtor Park Square West Associates, LLC ("Park Square Property Owner"). *Id.* at ¶ 14. And the Park Square Property Owner owns the Park Square West commercial property at 101 Summer Street, Stamford, Connecticut ("Park Square Property") in fee simple. *Id.* at ¶ 15.

Seaboard Realty owns twenty-five percent of Seaboard Hotel member Associates, LLC

("Courtyard Borrower"), while the remaining interest is split among fifty-five other owners. *Id.* at ¶ 16. The Courtyard Borrower owns 100% of Seaboard Hotel Associates, LLC ("Courtyard Lessee"). *Id.* at ¶ 17. And the Courtyard Lessee is the ground lessee for property at 275 Summer Street, Stamford, Connecticut ("Courtyard Property"). *Id.* at ¶ 18.

### 2. Park West Loan

On November 1, 2012, NCA Investors Trust allegedly loaned $12 million to Park Square Borrower, a loan supported in three ways: (1) a guarantee by PSWMA I of Park Square Borrower's repayment of the loan; (2) an inter-creditor and subordination agreement in the original principal amount of $6.85 million entered into by Seaboard Realty, PSWMA II, and the Park Square Borrower; and (3) an Indemnification and Guarantee Agreement in favor of NCA Investors Trust entered into by Mr. DiMenna. *Id.* at ¶ 19–20.

On March 25, 2014, the Park Square Borrower, NCA Investors Trust, DiMenna, and PSWMA I modified the Park Square loan and increased it to $15.3 million. *Id.* at ¶ 25. The modified variable interest loan is based on 13.5% (14% at the date of the modification) for the initial $12 million advance and 17.5% (18% at the date of the modification) for the $3.3 million additional advance, with interest payable beginning on April 1, 2014, a balloon principle payment upon the maturity date, and a modified loan has a 24% default rate. *Id.* at ¶ 26.

### 3. Courtyard Loan

On November 30, 2012, NCA Investors Trust allegedly entered into a loan agreement with the Courtyard borrower for $3.5 million, with 12.5% interest payable beginning on January 1, 2013 and a 24% default rate, loan guaranteed by Seaboard Hotel LTS Member Associates, LLC ("Courtyard Guarantor") and Mr. DiMenna, as a condition of NCA Investors Trust making the Courtyard Loan. *Id.* at ¶ 21–22. The Courtyard Guarantor and the Courtyard Borrower also

pledged 100% of the membership interest in Courtyard Guarantor and Courtyard Lessee and other security interests. *Id.* at ¶ 23. Finally, the obligations of the Park West Loan and the Courtyard Loan were cross-defaulted and cross-collateralized among the Park West Borrower, the Courtyard Borrower, Mr. DiMenna, PSWMA I, and the Courtyard Guarantor. *Id.* at ¶ 24.

### 4.    Bankruptcy Action

On December 13, 2015, Seaboard Realty, PSWMA II, PSWMA I, Park West Borrower, Courtyard Borrower, Courtyard Guarantor, and other related entities filed Chapter 11 petitions in Delaware Bankruptcy Court. *Id.* at ¶ 28. Other Seaboard entities later filed Chapter 11 petitions. *Id.* at ¶ 29.

### 5.    Document Destruction

META Advisors, a trustee of NCA Investors Trust, entered a contract for the storage of Seaboard records. Newbury Common-Moving Seaboard Documents E-Mail, ECF No. 164-6 ("Seaboard Documents Email").

On July 27, 2017, there was an e-mail to "confirm our agreement that You (Barran Janitorial) agree to work as an Independent contractor for META Advisors; in its capacity as the trustee of the NCA Investors' Liquidated Trust, to move all of the Seaboard records, boxes and computers, from the basement of One Atlantic Street in Stamford, CT, to 300 Wilson Avenue in Norwalk, CT, for the total of $2,000 (paid once the job is complete)." *Id.* Bob Musumeci of RTA International owned the Norwalk facility. *Id.*

On July 29, 2017, Lou Pento sent an e-mail to Mr. Musumeci that "[w]e received 10 truck loads of files today from 7:30 AM to 5:30 PM. We arranged the boxes by number sequence so that all files are easily accessible. Please note the boxes that are all the way on the left are marked with a red x and we were told that these are no longer needed." *Id.*

On July 30, 2017, Lou Pento advised Mr. Musumeci to keep the boxes until further notice. *Id.* ("For now, please don't get rid of any of the boxes. I'm not sure what files are marked with a red X. but before we throw any of them out, I want to clarify what they are.").

On December 4, 2017, a litigation hold was served upon NCA Investors Trust, which stated that NCA Investors Trust was "currently engaged in and/or may become engaged in litigation. Thus, the You, and all of your employees, agents, representative and businesses, are hereby given notice not to destroy, conceal or alter any paper or electronic files, . . . . Please forward a copy of this letter to all persons and entities with custodial responsibility for the items referred to in this letter." Notice of Requirement to Retain Documents for Purposes of Litigation and/or Pending Litigation, ECF No. 164-7 ("Litigation Hold").

In May 2018, Mr. Musumeci disposed of the documents. Affidavit of Charles Deluca, ECF No. 164-10 ("Deluca Aff."), at ¶ 7

On July 3, 2018, NCA Investor Trust counsel notified counsel for the Defendants of an index of all the boxes of Seaboard documents provided to NCA Investors Trust. *Id.* at ¶ 4.

On July 5, 2018, counsel for Defendants requested "to inspect the boxes referenced in your recent disclosure." *Id.* at 5.

Between July 5 and August 17, 2018, counsel for Defendants made four requests for the documents. *Id.* at 5–18.

On August 22, 2018, NCA Investors Trust's counsel notified Defendants' counsel that Mr. Musumeci discarded the documents at his warehouse in May of 2018. *Id.* at ¶ 7.

## B.    Procedural History

On February 2, 2016, NCA Investors Trust sued Mr. DiMenna and Defendants, alleging two counts of breach of contract and one count of unjust enrichment. Complaint, ECF No. 1. On

the same day, NCA Investors Trust also moved for a prejudgment remedy. Motion for Prejudgment Remedy, ECF No. 8.

On February 23, 2016, the Court held a status conference in the case and set a March 11, 2016 hearing for the motion for prejudgment remedy. Minute Entry, ECF No. 22.

On March 15, 2016, the Defendants filed an Answer to the Complaint and asserted cross-claims against Mr. DiMenna. Answer to Complaint with Affirmative Defenses and Jury Demand, ECF No. 32.

On March 23, 2016, NCA Investors Trust amended its Complaint and its motion for prejudgment remedy. Amended Complaint, ECF No. 40; Amended Motion for Prejudgment Remedy, ECF No. 41.

On March 28 and 31, 2016, the Court held a prejudgment remedy hearing and NCA Investors Trust moved orally for an entry of default as to Mr. DiMenna. Minute Entry, ECF No. 50; Minute Entry, ECF No. 53.

On April 29, 2016, the Court held another motion hearing on the prejudgment remedy. Minute Entry, ECF No. 60.

On May 31, 2016, NCA Investors Trust formally moved for an entry of default as to Mr. DiMenna, which was granted on June 8, 2016. Motion for Default Entry, ECF No. 64; Order Granting Motion for Default Entry, ECF No. 65.

On June 29, 2016, the Court granted in part and denied in part NCA Investors Trust's motion for prejudgment remedy, finding probable cause for unjust enrichment as to Mr. Merritt in the amount of $724,883.56 and as to Mr. Kelly in the amount of $555,074.30. Ruling on Pending Mots.

On July 1, 2016, NCA Investors Trust moved for a default judgment against Mr.

DiMenna, which was amended on July 5, 2016. Motion for Default Judgment; ECF No. 68; Amended Motion for Default Judgment, ECF No. 69.

On August 24, 2016, the parties jointly filed a Rule 26(f) Report. Rule 26(f) Report, ECF No. 75.

On September 8, 2016, the Court held a telephonic Rule 26(f) report scheduling conference. Minute Entry, ECF No. 77. Following the telephonic conference, the Court issued a scheduling order. Scheduling Order, ECF No. 78.

On November 11, 2016, the Court granted the motion for default judgment. Order, ECF No. 93.

The same day, NCA Investors Trust filed a Second Amended Complaint. Second Amended Complaint, ECF No. 92.

On November 28, 2016, the Defendants answered the Second Amended Complaint, with defenses and cross-claims against Mr. DiMenna. Answer to Amended Complaint with Affirmative Defenses, ECF No. 96.

On January 4, 2017, the Court held a telephonic status conference. Minute Entry, ECF No. 106.

On April 10, 2017, the Court issued an Order instructing the parties to confer and draft a joint motion for stipulated stay. Order, ECF No. 109.

On April 18, 2017, the Court held a telephonic status conference. Minute Entry, ECF No. 113.

On the same day, the Court stayed the case due to the potential resolution of a related bankruptcy case pending in the United States Bankruptcy Court for the District of Delaware. Order Staying Case, ECF No. 115.

On July 5, 2017, the Court held a telephonic status conference. Minute Entry, ECF No. 118.

On the same day, the Court continued its stay of the case until August 4, 2017. Order Staying Case, ECF No. 119.

On August 4, 2017, the Court held a telephonic status conference. Minute Entry, ECF No. 123. During the call, the parties jointly moved to stay the case until September 13, 2017. *Id.*

On September 13, 2017, the Court held a telephonic status conference. Minute Entry, ECF No. 126. During the call, the parties moved to stay proceedings until September 20, 2017. *Id.*

On September 20, 2017, the Court lifted the stay. Minute Entry, ECF No. 128.

On October 5, 2017, the parties jointly filed an amended Rule 26(f) Report. Amended Report of Rule 26(f) Planning Meeting, ECF no. 129.

On October 12, 2017, NCA Investors Trust amended the Second Amended Complaint. Third Am. Compl. On December 12, 2017, Defendants answered the Third Amended Complaint, with affirmative defenses and cross-claims against Mr. DiMenna. Answer to Amended Complaint with Affirmative Defenses, ECF No. 139.

On January 23, 2018, the parties filed an amended Rule 26(f) Report. Amended Report of Rule 26(f) Planning meeting, ECF No. 140.

On January 31, 2018, the Court held a telephonic scheduling conference. Minute Entry, ECF No. 142. Following the telephonic status conference, the Court issued an amended scheduling order. Scheduling Order, ECF No. 143.

On June 18, 2018, the Court held a telephonic status conference. Minute Entry, ECF No. 150.

On October 18, 2018, the Court issued a revised scheduling order. Scheduling Order, ECF No. 156.

On October 31, 2018, Defendants Kelly and Merritt moved to depose the remaining Defendant, Mr. DiMenna, which the Court granted. Motion to Take Deposition from John J. DiMenna, Jr., ECF No. 158; Order, ECF No. 158.

On November 9, 2018, the Court held a telephonic status conference. Minute Entry, ECF No. 163.

On December 12, 2018, Defendants moved for sanctions against NCA Investors Trust for destruction of discovery documents. Motion for Sanction, ECF No. 164.

On February 4, 2019, NCA Investors Trust objected to the motion for sanctions. Objection Re: Motion for Sanctions, ECF No. 172.

On March 1, 2019, Defendants replied to the objection. Reply to Response to Motion for Sanctions, ECF No. 173.

On June 18, 2019, the Court held a hearing on the motion for sanctions.

## II.    STANDARD OF REVIEW

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). Courts have "broad discretion" in deciding whether and how to sanction parties for spoliation of evidence. *See id.* at 779; *accord Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106–07 (2d Cir. 2002) ("Even in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs"). "Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in

sanctioning a party for discovery abuses, [] and the spoliation of evidence." *Reilly v. NatWest Markets Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999) (citations omitted).

In determining the appropriate sanction for spoliation, courts consider what will "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.'" *West*, 167 F.3d at 779 (citation omitted).

## III.    DISCUSSION

To obtain sanctions for the spoliation of evidence, the movant must show "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 628 (2d Cir. 2018) (quoting *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 162 (2d Cir. 2012)). However, "even where a party has shown that its opponent had an obligation to preserve certain evidence and willfully failed to do so, sanctions need not automatically follow; instead, [the Second Circuit has] simply held that such conduct *may* provide sufficient circumstantial evidence that relevant and prejudicial data was lost." *Id.* at 630 (emphasis in original).

### A.    Obligation to Preserve

An obligation to preserve evidence "arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001); *Kronisch v.*

*United States*, 150 F.3d 112, 126–27 (2d Cir. 1998) ("This obligation . . . arises when the party has notice that the evidence is relevant to litigation—most commonly when suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation.").

Defendants argue that the relevant documents were both under the control of NCA Investors Trust at the time of their destruction, and that NCA Investors Trust had an obligation to preserve the documents during ongoing litigation. Memorandum in Support of Motion for Sanctions, ECF No. 164-1 ("Mem. in Supp. of Sanctions"), at 7. Both NCA Investors Trust and its Trust Committee members knew that the boxes stored at 300 Wilson Avenue in Norwalk had to be preserved and by July 30, 2017, the custodian of the documents, Robert Musumeci, knew that the boxes had to be preserved. *Id.* By December 2017, NCA Investors Trust also knew a hold letter had to be sent to anyone in control of the relevant documents. *Id.* In addition, NCA Investors Trust's counsel had instructed Mr. Musumeci on multiple occasions not to dispose of any boxes housed at 300 Wilson Avenue. *Id.* at 7–8. Finally, the litigation hold letter stated that "[f]ailure to abide by this request could result in extreme penalties against you." *Id.* at 8.

Moreover, the Bankruptcy Court Order directed NCA Investors Trust to preserve and maintain all documents. *Id.*

As a result, Defendants argue that NCA Investors Trust knew to maintain the records but failed to do so.

In response, NCA Investors Trust argues that Mr. Musumeci's conduct cannot be imputed to it because Musumeci's actions were contrary to the Trust's interests. Pl.'s Memorandum of Law in Opposition to Motion for Sanctions, ECF No. 172 ("Pl.'s Obj. to

Sanctions"), at 7. Because Mr. Musumeci acted in furtherance of another company's interests and against the instructions of NCA Investors Trust's counsel, his destruction of the relevant documents should not be imputed to NCA Investors Trust. *Id.* at 8.

In reply, Defendants argue that Mr. Musumeci's conduct should be imputed to NCA Investors Trust. Reply to Plaintiff's Objection to Motion for Sanctions, ECF No. 173 ("Reply"), at 1. As a member of the NCA Investors Trust Committee, Mr. Musumeci acts as a principal for NCA Investors Trust, not as an agent. *Id.* at 2. Thus, his actions should be imputed to the Trust. Even if he was merely an agent of NCA Investors Trust, Defendants argue that the adverse interest exception to principal-agent liability does not apply because Mr. Musumeci's destruction of documents was not adverse to the interests of the Trust. *Id.* at 3. Defendants also argue that Mr. Musumeci's actions were not fraudulent, disloyal, or self-serving, meaning his actions do not fall within the adverse interest exception. *Id.*

The Court agrees.

Here, there was a duty to preserve the destroyed documents. "The duty to preserve attached at the time that litigation was reasonably anticipated." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003). On at least two occasions, Mr. Musumeci had been warned not to dispose of the Seaboard documents: July 30, 2017 e-mail and December 4, 2017 litigation hold. *See* Seaboard Documents Email ("For now, please don't get rid of any of the boxes. I'm not sure what files are marked with a red X. but before we throw any of them out, I want to clarify what they are."); Litigation Hold ("Thus, the You, and all of your employees, agents, representative and businesses, are hereby given notice not to destroy, conceal or alter any paper or electronic files, . . . . Please forward a copy of this letter to all persons and entities with custodial responsibility for the items referred to in this letter."). After the first notice, Mr.

Musumeci "must suspend [his] routine document retention/destruction policy and put in place a "litigation hold" to ensure the preservation of relevant documents." *Id.* at 218.

Accordingly, there was an obligation to preserve the documents at issue.

## B.       Culpable State of Mind

A culpable state of mind can be established by "a showing that the evidence was destroyed knowingly, even if without intent to [breach a duty to preserve it], or negligently."[1] *Residential Funding Corp.*, 306 F.3d at 108. "Once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003).

Defendants argue that negligence alone is sufficient to sanction NCA Investors Trust, if evidence is destroyed after there is a duty to preserve. Mem. in Supp. of Sanctions at 8. Defendants argue that Mr. Musumeci knew that there was ongoing litigation, had instructions from both NCA Investors Trust's counsel and the Bankruptcy Court not to destroy evidence, and nevertheless destroyed the files. *Id.* at 11. Mr. Musumeci's actions resulted in the destruction of over 1,000 boxes worth of documents related to Seaboard and Mr. DiMenna. *Id.* at 12.

In response, NCA Investors Trust argues that the destruction of the records was not attributable to bad faith or gross negligence because NCA Investors Trust tried to preserve the documents. Pl.'s Obj. to Sanctions at 9. Although Mr. Musumeci destroyed the documents, he mistakenly believed that the Seaboard matter concluded. *Id.* 9. In the absence of bad faith, NCA Investors Trust argues that there should be no sanction.

---

[1] Effective December 1, 2015, Fed. R. Civ. P. 37(e)(2) was amended with respect to the obligations of parties to preserve electronically stored information, which now provides that an adverse inference is warranted only when the court finds that a spoliating party "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2); *see Learning Care Group, Inc. v. Armetta*. 315 F.R.D. 433, 439-440 (D.Conn. 2016). This case, however, deals with physical discovery therefore the intent standard does not apply here.

The Court disagrees.

"Once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent." *Zubulake*, 220 F.R.D. at 220. Because there was a duty to preserve the documents for pending litigation and communicate that preservation to any custodians, at the very least, there was negligence in the destruction of the documents.

## C. Relevance

In the Second Circuit, "the party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that 'the destroyed [or unavailable] evidence would have been of the nature alleged by the party affected by its destruction.'" *Residential Funding Corp.*, 306 F.3d at 109 (quoting *Kronisch*, 150 F.3d at 127; *Byrnie v. Town of Cromwell*, 243 F.3d 93, 110 (2d Cir. 2001)). In those circumstances, "[c]ourts must take care not to 'hold[ ] the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed [or unavailable] evidence,' because doing so 'would subvert the . . . purposes of the adverse inference, and would allow parties who have . . . destroyed evidence to profit from that destruction.'" *Id.* (citing *Kronisch*, 150 F.3d at 128; *Byrnie* 243 F.3d at 110).

Defendants argue that Mr. Musumeci destroyed "financial records, wire transfers, legal documents, loan documents and the like, it is difficult to imagine that these documents did not contain information which could be favorable to the defense." Mem. in Supp. of Sanctions at 8. This comprised twenty-six document requests—none of which were objected to— "suggesting they were relevant for the purpose of discovery." *Id.* And allowing a Trustee to destroy evidence of relevant financial information and profit from the destruction would hinder discovery. *Id.* at 12–13. Because this is a case dealing with unjust enrichment through allegedly fraudulent financial dealings, Defendants argue that the source of project funding and Mr. DiMenna's

personal accounts are relevant to potential defenses. *Id.* at 13–14. Due to the destruction of relevant documentation, Defendants argue that they will be unable to fully explore issues related to Mr. DiMenna's fraudulent dealings. *Id.* at 14.

In response, NCA Investors Trust argues that Defendants are not entitled to sanctions because they cannot establish that the records are relevant to their defenses. Pl.'s Obj. to Sanctions at 10. NCA Investors Trust asserts that a reasonable trier of fact must be able to infer that the destroyed evidence would disfavor the Defendants. *Id.* And Defendants have failed to identify specific documents and how those documents would have related to their potential defenses. *Id.* at 11. Absent a showing of how the Seaborg financial records would support potential defenses or that other electronic documents could not support the same defenses, the Trust argues that the documents are irrelevant for the Defendants' case against the pending charge of unjust enrichment. *Id.* at 11–12.

In reply, Defendants argue that the documents are relevant to the defenses of unclean hands and unconscionability. Reply at 7–9.

The Court agrees.

Because "holding the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed evidence would subvert the prophylactic and punitive purposes of the adverse inference, . . . the level of proof that will suffice to support an inference in favor of the innocent party on a particular issue must be less than the amount that would suffice to survive summary judgment on that issue." *Kronisch*, 150 F.3d at 128.

Here, the destroyed documents were relevant. The documents moved into storage included "Seaboard records, boxes and computers." *See* Seaboard Documents E-mail. Their destruction became evident only because Defendants sought them in discovery and had to

threaten to file a motion to compel to learn about their absence. *See* Deluca Aff. at ¶¶ 3–6.

Accordingly, the Court finds that there is enough evidence to indicate that the destroyed documents were relevant. *Residential Funding Corp.*, 306 F.3d at 109 ("the destroyed [or unavailable] evidence would have been of the nature alleged by the party affected by its destruction." (quoting *Kronisch*, 150 F.3d at 127; *Byrnie*, 243 F.3d at 110)).

### D.     Type of Sanction

A spoliation sanction works to "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.'" *West*, 167 F.3d at 779 (citation omitted). Sanctions for spoliation may include an award of expenses and attorneys' fees, an instruction for the jury to draw an adverse inference from the absence of the evidence to the entry, and default judgment. *See Id.* at 780 (providing examples of appropriate adverse inference instructions); *Mastr Adjustable Rate Mortgs. Trust 2006–OA2 v. UBS Real Estate Secs., Inc.*, 295 F.R.D. 77, 82 (S.D.N.Y. 2013) (noting that this range of sanctions is available where spoliation is found).

Defendants argue that, although it is an extreme remedy, the case should be dismissed because Mr. Musumeci destroyed over 1,000 boxes of documents, which has prejudiced their defense. Def.'s Mem. in Supp. of Sanctions at 14. Alternatively, Defendants argue that an adverse inference should be included in the instructions to the jury that these documents would have been harmful to NCA Investors Trust's case. *Id.* at 15. Additionally, Defendants request attorneys' fees and costs for the work done in connection with the spoliation issue, including costs incurred by future discovery to find alternative sources of information. *Id.*

In response, NCA Investors Trust argues that "none of the missing documents could have

been relevant to any defense interposed my them, Merritt and Kelly are already in the same position they were prior to any destruction of evidence." Pl.'s Obj. to Sanctions at 14. NCA Investors Trust also argues that an adverse inference instruction should not be given lightly and would be far too extreme in this case because the Defendants were managing members of the company central to Mr. DiMenna's fraudulent scheme. *Id.* at 13.

In reply, Defendants reiterate that the gross negligence in the handling of the Seaboard documents warrants a dismissal of the lawsuit or an adverse inference at trial, along with NCA Investors Trust paying for reasonable attorneys' fees and costs associated with this discovery action. Reply at 9.

The Court will address each of the proposed sanctions in turn.

### 1. Dismissal

The dismissal of entire claims or the complete dismissal of cases on the merits are drastic remedies, imposed only in the most extreme circumstances and typically after the consideration of alternative, less drastic sanctions. *See West*, 167 F.3d at 779; *Reilly v. Natwest Mkts. Grp.*, 181 F.3d 253, 267 (2d Cir. 1999) ("Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses.").

Here, other less dramatic sanctions may be more reasonable. *See World Wide Polymers*, 695 F.3d at 160 (overturning a district court dismissal of a case where "there is no indication in the record that [Plaintiff] had any notice that a possible consequence of late filing could be striking its request for damages and no opportunity to argue its case before the court prior to such harsh action being taken against it" . . . "the district court failed to provide any analysis as to why the first sanction meted out was one of the most severe sanctions possible"); *Scherbakovskiy v. Da Capo Al fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007) ("With no findings or explanation from

17

the district court, we cannot conclude that the sanction of dismissal of the complaint and granting of counter claims was appropriate"); *see also John B. Hull*, 845 F.2d at 1777 (upholding dismissal of a complaint where Defendant "failed to provide any meaningful discovery concerning core trial issues despite three clear court orders, which included two warnings that dismissal would follow if [Defendant] failed to provide adequate responses").

But the Court cannot make that determination with sufficient certainty at this time. Given the number of documents destroyed—over 1,000 boxes worth—these documents may have contained evidence probative of Defendants' defense. The impact of their absence may be clearer at the close of discovery, when the parties are likely to file dispositive motions. At that time, the Court will be better be able to assess whether NCA Investors Trust's claims can move forward without unduly prejudicing the ability of Mr. Kelly and Mr. Merritt to defend themselves. *Estate of Hamilton v. N.Y.C.*, 627 F.3d 50, 59 (2d Cir. 2010) ("[A] a district court may still entertain affirmative defenses at the summary judgment stage in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings." (quoting *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003)); *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) ("Even without a discovery order, a district court may impose sanctions for spoliation, exercising its inherent power to control litigation.").

The Court therefore will not dismiss this case at this time.

## B. Adverse Inference Sanction

For an adverse inference, the missing evidence must be relevant to a party's claim or defense. *Residential Funding Corp.*, 306 F.3d at 107. The nature of this inquiry varies depending on the culpability of the party who destroyed the information. Proof of bad faith alone is

"sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to that party." *Id.* at 109. In some circumstances, where the conduct is particularly egregious, proof of gross negligence alone also suffices. *Id.*

To recover for unjust enrichment, NCA Investors Trust "must prove (1) that the defendants were benefitted, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiff's detriment." *Vertex, Inc. v. City of Waterbury*, 278 Conn. 557, 573 (2006). The unjust enrichment claim is "a broad and flexible remedy," "[w]ith no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable." *Id.* As this Court previously stated "[t]he essence of [NCA]'s unjust enrichment claim is that it relied on the personal guarantees of Defendants Merritt and Kelly in entering into the PSW Loan Modification to [NCA]'s detriment and these loan obligations have not been paid in accordance with their terms." Ruling on Pending Motions, ECF No. 66, at 8.

Defendants argue that the destruction of the evidence was grossly negligent and—that alone—supports an adverse inference. Mem. in Supp. of Sanctions at 12. Because NCA Investors Trust, through one of its trustees, destroyed over 1,000 boxes of documents— "including financial records, wire transfers, legal documents, loan documents and the like"— Defendants should not be disadvantaged due to the destruction of those documents. *Id.*

The financial information contained in those boxes included Mr. DiMenna's fictionalized financial records, projections, fake cash balances, forged bank statements, fictional contracts, and other fraudulent documents. *Id.* at 13. Because unjust enrichment presumes that the money borrowed from the Trust was used to benefit Defendants, the fact that Mr. DiMenna supplied them with fraudulent records is also relevant to their defense against NCA's unjust enrichment

claim and the Seaboard documents could have bolstered that defense. *Id.* at 13–14. Accordingly, Defendants believe that their inability to examine those documents warrants a dismissal or an adverse inference instruction. *Id.* at 14–15.

NCA Investors Trust argues that the Defendants faithfully discharged their duties as managing members of Seaboard and would have been aware of any fraudulent financial circumstances. Pl.'s Obj. to Sanctions at 13. Because they chose to delegate execution of the day-to-day operations to Mr. DiMenna does not absolve them of their liability for his fraudulent conduct because they were managers of Seaboard. *Id.* So the claimed defense of no knowledge would not absolve them of liability for Mr. DiMenna's conduct. *Id.* at 14. Accordingly, NCA Investors Trust alleges that Defendants are in no worse position now than they would have had the documents Mr. Musumeci not destroyed the documents. *Id.*

In reply, Defendants argue that Mr. Musumeci's actions should be imputed to NCA Investors Trust and an adverse inference is appropriate in this case. Reply at 3. Defendants argue that the documents are relevant to Defendants affirmative defenses of unclean hands and unconscionability. *Id.* at 7. Moreover, because Mr. DiMenna is incarcerated and refuses to participate in a deposition, there is no other way to either understand or present the evidence related to the 1,000 boxes that Mr. Musumeci destroyed. *Id.* at 9.

To make an unclean hands defense, a party "must show that his conduct has been fair, equitable and honest as to the particular controversy in issue" and "[u]nless the [party]'s conduct is of such a character as to be condemned and pronounced wrongful by honest and fair-minded people, the doctrine of unclean hands does not apply." *Bauer v. Waste Mgmt. of Conn., Inc.*, 239 Conn. 515, 525 (1996) (citation omitted). In cases "[w]here a plaintiff's claim grows out of or depends upon or is inseparably connected with his own prior fraud, a court of equity will, in

general, deny him any relief, and will leave him to whatever remedies and defenses at law he may have." *Thompson v. Orcutt*, 257 Conn. 301, 310 (2001) (quoting *Samasko v. Davis*, 135 Conn. 377, 383 (1949)). An unclean hands defense only applies to the particular transaction under consideration and "the conduct alleged to be unclean must have been done directly against the interests of the party seeking to invoke the doctrine, rather than the interests of a third party." *Id.* at 311 (citations omitted).

Alternatively, "[a] determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made—i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party . . . ." *Hottie v. BDO Seidman LLP*, 268 Conn. 694, 719 (2004) (quoting *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988)) (applying New York law). "The doctrine of unconscionability contains both substantive and procedural aspects, and whether a contract or clause is unconscionable is to be decided by the court against the background of the contract's commercial setting, purpose and effect . . . ." *Id.* (quoting *Sablosky v. Edward S. Gordon Co.*, 73 N.Y.2d 133, 138 (1989)).

Because of the nature of the pre-destruction warnings, *see* Seaboard Documents E-mail; Litigation Hold, and the way NCA Investors Trust's counsel communicated the destruction to Defendants' Counsel, *see* Deluca Aff. at ¶¶ 3–6, an adverse inference instruction regarding the Defendants' unjust enrichment defenses of unclean hands or unconscionability could be appropriate. *See Residential Funding Corp.*, 306 F.3d at 108 ("The sanction of an adverse inference may be appropriate in some cases involving the negligent destruction of evidence because each party should bear the risk of its own negligence.").

Moreover, the breadth of the document destruction exceeding 1,000 boxes, along with the

content speaking directly to Mr. DiMenna's criminally fraudulent activity, all point to the relevance of the potential documents for any equitable defense. Currently, however, the Court is not sufficiently knowledgeable about the circumstances to determine the efficacy of either an unclean hands or unconscionability defense at trial. *See* Mem. in Supp. of Sanctions at 8, 12–14. At trial, the Court would need to know the circumstances and context of how NCA Investors Trust would present its case and how Defendants would present the unclean hands and/or the unconscionability defense to decide whether an adverse inference instruction to the jury is warranted. *See Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999) ("Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses, and for the spoliation of evidence." (internal citation omitted)).

Accordingly, the Court denies the motion for the sanction of an adverse inference jury instruction without prejudice to renewal in the context of trial, if not after the conclusion of the trial, to assess how the Court will should charge jury regarding the destroyed Seaboard documents. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276 (holding that when a motion is too sweeping for the Court to decide before trial, "the Court will reserve judgment on the motion until trial when admission of particular pieces of evidence is in an appropriate factual context").

### C. Costs and Attorney's Fees

Another requested sanction for this spoliation is costs and attorney's fees. Mem. in Supp. of Sanctions at 15.

Given the significance of the spoliation here and its impact on this case going forward, the Court will award attorney's fees and costs related to the bringing of this motion and for any

costs incurred in seeking alternative means of discovery. *See Doe v. Norwalk Cmty. Coll.*, 248 F.R.D. 372, 381–82 (D. Conn. 2007) (awarding costs arising from "the discovery necessary to identify alternative sources of information or from the investigation and litigation of the document destruction itself"); *Prezio Health, Inc. v. Schenk*, 3:13 CV 1463 (WWE), 2016 WL 111406, at *3 (D. Conn. Jan. 11, 2016) (awarding attorneys' fees for spoliation "incurred in pursuing this discovery issue"); *see also generally Gutman v. Klein,* No. 03 Civ. 1570(BMC), 2009 WL 3296072 (E.D.N.Y. Oct. 13, 2009).

Any such motion for attorney's fees and costs relating to this sanction should be filed within twenty-one (21) days of the resolution of this case in this Court.

## IV.     CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** the motion for sanctions**.**

To the extent Defendants seek dismissal, the Court **DENIES** the motion without prejudice to renewal after the close of discovery.

To the extent that Defendants seek an adverse jury instruction with respect to their affirmative defenses on NCA Investors Trust's unjust enrichment claim, the Court **DENIES** the motion without prejudice to renewal at the time of trial.

To the extent that Defendants seek attorney's fees and costs related to any additional discovery required because of the spoliation of evidence as well as associated with bringing this motion, the Court **GRANTS** the motion.

Defendants shall file any motion for attorney's fees and costs within **twenty-one (21) days** of the resolution of this case in this Court.

**SO ORDERED** at Bridgeport, Connecticut, this 28thday of June 2019.

   /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE