NCA INVESTORS LIQUIDATING TRUST,
    *Plaintiff*,

    v.

JOHN J. DIMENNA, JR, THOMAS L. KELLY, JR., & WILLIAM A. MERRITT, JR.,
    *Defendants*.

No. 3:16-cv-156 (VAB)

**RULING AND ORDER ON MOTION FOR RECONSIDERATION**

On December 30, 2019, NCA Investors Liquidated Trust ("NCA Investors Trust" or "Plaintiff"), moved for reconsideration of this Court's December 23, 2019, Ruling and Order on a motion for summary judgment filed by Thomas L. Kelly, Jr., and William A. Merritt, Jr. (collectively "Defendants"). Pl.'s Mot. for Recons., ECF No. 217 (Dec. 30, 2019) ("Pl.'s Mot."), Pl.'s Mem. in Supp. of Pl.'s Mot., ECF No. 217-1 (Dec. 30, 2019) ("Pl.'s Mem."); *see also* Ruling and Order on Mot. for Summ. J., ECF No. 213 (Dec. 23, 2019) ("Ruling and Order").

Under Local Rule 7(c), NCA Investors Trust asks the Court to reconsider its decision granting in part and denying in part summary judgment for Defendants, specifically regarding NCA Investors Trust's remaining unjust enrichment claim. Pl.'s Mem. at 1-2 (citing D. Conn. L. Civ. R. 7(c)).[1]

---

[1] While Plaintiff filed this motion under Local Rule 7(c), the Court recognizes that Plaintiff's motion also warrants consideration under Rule 59 of the Federal Rules of Civil Procedure, although there is no difference in the underlying legal standard in reviewing either motion. *See Kelly v. Honeywell Int'l, Inc.*, No. 3:16-cv-00543 (VLB), 2017 WL 6948927, at *2 (D. Conn. May 25, 2017) ("A motion for reconsideration filed under Local Rule 7(c) is equivalent as a practical matter to a motion for amendment of judgment under Fed. R. Civ. P. 59(e)." (citing *City of Hartford v. Chase*, 942 F.2d 130, 133 (2d Cir. 1991)). "[E]ach seeks to reopen a district court's decision on the theory that the court made mistaken findings in the first instance." *City of Hartford*, 942 F.2d at 133.

For the reasons discussed below, the motion for reconsideration is **DENIED**.

I. **BACKGROUND**

The Court will assume familiarity with the underlying record of this case and will only discuss matters relevant to resolving this motion.

On September 6, 2019, Defendants moved for summary judgment, and submitted a memorandum of law, statement of material facts, several affidavits, and forty-nine exhibits. *See* Docket Entries, ECF No. 195 (Sept. 6, 2019) (containing the referenced filings).

On November 4, 2019, NCA Investors Trust timely opposed Defendants' motion for summary judgment, and filed its supporting memorandum of law, response to Defendants' statement of material facts, affidavits, and fifty-seven exhibits. *See* Docket Entries, ECF No. 203 (Nov. 4, 2019) (containing the referenced filings). Defendants timely replied, Defs.' Reply to Pl.'s Opp., ECF No. 203 (Nov. 26, 2019), and on December 18, 2019, the Court held a hearing on Defendants' motion for summary judgment, Minute Entry, ECF No. 211 (Dec. 18, 2019).

On December 23, 2019, the Court granted in part and denied in part Defendants' motion for summary judgment. Ruling and Order at 30. The Court dismissed NCA Investors Trust's breach of contract claims, but allowed the unjust enrichment claim, albeit limited to Defendants' distributions between June or July 2015 and December 2015 and possibly subject to the doctrine of unclean hands, as it relates to the destruction of documents. *Id.*

The Court emphasized that NCA Investors Trust did not lay down the necessary foundation for its unjust enrichment claim:

> Given the vast amounts of underlying financial documentation and the various corporate entities involved here in this record, the finder of fact could not reasonably determine how much of the money Kelly and Merritt allegedly earned from these various entities instead rightfully belonged to NCA Investors. Based on this record, rather than seek to disgorge from Kelly and Merritt the amount the

> two have been unjustly enriched by Mr. DiMenna's fraud, NCA Investors Trust instead seeks to be compensated fully for their own losses. At this stage of the case, however, NCA Investors Trust "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson*[ *v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted)].
>
> Indeed, as Defendants have argued, an unjust enrichment claim could not arise until the underlying loans were in default. NCA Investors Trust, in fact, received the monthly payments from PSWMA on the PSW and Upsize Loans until June 2015, Pl.'s SMF *id.* ¶¶ 30, 73, 75, and SHMA made monthly payments to the Courtyard Loan until July 2015, *id* ¶¶ 30, 74. As a result, a reasonable factfinder could not conclude that a basis for unjust enrichment existed for any distributions made to Merritt and Kelly, i.e., "benefits that it would be unjust for [them] to keep," *Town of New Hartford*[ *v. Conn. Res. Recovery Auth.*, 291 Conn. 433, 460 (2009)] (citation and internal quotation omitted), for any distributions made to them before June 2015 for the PSW and Upsize Loans and before July 2015 with respect to the Courtyard Loan.
>
> Of course, after the bankruptcy filing of Seaboard Realty and its related entities on December 13, 2015, neither Merritt nor Kelly received distributions that "would be unjust for [them] to keep." *See* Compl. ¶ 28 (setting forth the date of bankruptcy); Pl.'s SMF ¶¶ 51-53 (referencing the Bankruptcy Case in Delaware). Thus, to the extent that there is a genuine dispute of material fact as to NCA Investors Trust's unjust enrichment claim, it is whether NCA Investors Trust has a right to claim any part of the distributions made to Merritt and Kelly between June or July 2015 and December 2015. While, as noted above, there is a serious legal question as to whether there is a basis on this record for NCA Investors Trust to pursue even that unjust enrichment claim, i.e., the lack of specificity as to why NCA Investors Trust has an entitlement to all of the distributions made to Merritt and Kelly during this limited several month period, the Court will allow this limited unjust enrichment claim to go forward for now and address this narrower issue before or at trial.

Ruling and Order at 25-26.

On December 30, 2019, NCA Investors Trust moved for the Court to reconsider its decision regarding the unjust enrichment claim and hold that there is a material issue of fact in

dispute as to (1) whether UCF, its predecessor-in-interest, had a priority claim for payments of its loans over Defendants' rights to interim distributions; and (2) whether Defendants were unjustly enriched by distributions received since 2012. Pl.'s Mem. at 1-2.

On January 8, 2020, Defendants opposed the motion for reconsideration. Defs.' Mem. in Opp'n to Pl.'s Mot., ECF No. 219 (Jan. 8, 2020) ("Defs.' Opp'n").

On January 14, 2020, NCA Investors Trust replied. Pl.'s Reply Mem. in Supp. of Pl.'s Mot., ECF No. 223 (Jan. 14, 2020) ("Pl.'s Reply").

## II. STANDARD OF REVIEW

"The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted). Indeed, "[m]otions for reconsideration shall not be routinely filed and shall satisfy the strict standard applicable to such motions." D. Conn. L. Civ. R. 7(c); *see also Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 108 (2d Cir. 2013) ("It is well-settled that a party may move for reconsideration and obtain relief only when the defendant identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

"Reconsideration is not intended for the court to reexamine a decision or the party to reframe a failed motion." *Fan v. United States*, 710 F. App'x 23, 24 (2d Cir. 2018) (citing *Questrom v. Federated Dep't Stores, Inc.*, 192 F.R.D. 128, 130 (S.D.N.Y. 2000)). "A motion for reconsideration 'is not a vehicle for relitigating old issues, presenting the case under new

theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple'[.]" *Mandell v. Doloff*, No. 3:17-cv-01282-MPS, 2018 WL 3677895, at *1 (D. Conn. Aug. 2, 2018) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012) (internal citation and quotation marks omitted)); *accord Shrader*, 70 F.3d at 257 ("[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided.").

## III. DISCUSSION

NCA Investors Trust's breach of contract claims failed because it was undisputed that "Defendants did not have actual knowledge of the loans and guarantees at issue." Ruling and Order at 18-19. NCA Investors Trust also failed to establish the necessary foundation for its unjust enrichment claim, *id.* at 24-26. None of the statutes cited by NCA Investors Trust provided a basis for its unjust enrichment claim, *id.* at 22-24, but the more fatal flaw was "the failure to demonstrate more specifically how Merritt and Kelly were unjustly enriched," *id.* at 24.

The Court held that "to the extent that there is a genuine dispute of material fact as to NCA Investors Trust's unjust enrichment claim, it is whether NCA Investors Trust has a right to claim any part of the distributions made to Merritt and Kelly between June or July 2015 and December 2015." *Id.* 26. The Court thus limited the unjust enrichment claim to the stated time period and to Defendants' affirmative defense of unclean hands as it relates to "NCA Investor's Trust's destruction of over 1,000 boxes worth of Seaboard Realty records." *Id.* at 26, 29.

NCA Investors Trust first argues that reconsideration is appropriate because it did not have the opportunity to brief the interplay between the Connecticut statutes it cited and the ones Defendants cited in their reply. Pl.'s Mem. at 3.

NCA Investors Trust next argues that its interest should be afforded priority over

5

Defendants, citing Conn. Gen. Stat. § 34-210 and *Lynes v. Helm*, 168 P.3d 651 (Mont. 2007) for support. Pl.'s Mem. at 5-6. Consequently, NCA Investors Trust contends that "as a creditor, [it] was entitled to repayment of its loans before any distributions were made to Kelly or Merritt, who were merely equity holders." *Id.* at 7.

Finally, NCA Investors Trust argues that it does not need to demonstrate with precision how much money Defendants received that actually belonged to it, because NCA Investors Trust is entitled to "the cash value of the distributions [Defendants] received." *Id.* at 7-9. According to NCA Investors Trust, "the UCF loans were in default immediately upon execution of original UCF Loan documents in 2012 and certainly when" the Upsize Guarantees were made in 2014. *Id.* at 9. Because the Upsize Guarantees were forged, the representations and warranties were false, and so NCA Investors Trust submits that the UCF Loans were in default since inception. *Id.* at 10. Thus, "Kelly and Merritt had no right to receive distributions." *Id.* at 11.

In response, Defendants first note that the statutes they cited in reply were only raised because of NCA Investors Trust's opposition. Def.'s Opp'n at 2. They submit that "[t]he fact that the Plaintiff did not cite to the proper statutory authority and that the defendants pointed this out should not be grounds for reconsideration." *Id.*

Next, Defendants argue that NCA Investors Trust has not cited any binding authority to support its claim that creditors had priority over an equity holder's entitlement to interim distributions. *Id.* at 3-4. They emphasize that the cited statutes only apply to the "winding up" of a limited liability company, and because the "prescribed winding-up process never occurred here," "Plaintiff's argument based on Conn. Gen. [Stat.] § 34-210 is inapplicable." *Id.* at 3.

Finally, Defendants argue that "[t]his is the first time that the Plaintiff has raised the issue of all three loans being in default from inception, and there is no reason that the Plaintiff could

6

not have raised the issue sooner," especially because the "issue of non-monetary default of the UCF Loans was never raised by the Plaintiff in its opposition" to summary judgment. *Id.* at 4. According to Defendants, there must be some nexus between the money lent by UCF and Defendants' distributions. *Id.* at 5. As an example, they note that of the additional $3.3 million from the Upsize Loan, none of it went to Defendants, either directly or directly. *Id.* Defendants contend that after fees, interest, expenses, and the $365,000 paid to UCF's CEO for a separate, unrelated investment, the net amount was less than $2.7 million. *Id.* Because "Plaintiff has produced no evidence to trace the UFCF Loans," *id.*, Defendants argue that "Plaintiff has not met its burden for reconsideration," *id.* at 6.

In reply, NCA Investors Trust again argues that "creditors seeking repayment of debt have priority over equity holders regarding distributions." Pl.'s Reply at 2. Next, NCA Investors Trust argues that "there is no dispute that the Loans were in default from inception," and that it has continuously argued "that the Seaboard Entities were insolvent and that the terms of the Loans had not been honored." *Id.* at 2-3. According to NCA Investors Trust, "reconsideration of this point is appropriate because the timing of the Loans being in default was not truly at issue until it was discussed during oral argument." *Id.* at 3. Finally, NCA Investors Trust analogizes its unjust enrichment claim against Defendants to another case, *U.S. Bank Nat'l Ass'n v. DiMenna*, No. FSTCV166028185S, 2017 WL 6503898 (Conn. Super. Ct. Nov. 17, 2017), where the court denied summary judgment on unjust enrichment claims involving Defendants related to other entities. *Id.* at 4-5. NCA Investors Trust submits that the inability of PSWMA and SHMA "to use funds distributed to Kelly and Merritt to satisfy UCF's debt constitutes a valid factual issue as to whether Kelly and Merritt were unjustly enriched." *Id.* at 5.

The Court disagrees.

7

As an initial matter, the Court first finds unavailing the proposition that NCA Investors Trust did not have an opportunity to brief arguments related to various Connecticut statutes. As Defendants noted, the statutes they cited in reply were in direct response to the inapplicable statutes NCA Investors Trust cited in opposition to summary judgment. *See* Ruling and Order at 22-24 (explaining that the statutes cited by NCA Investors Trust did not apply because they were either not in existence during the relevant time period or discussed the "winding up" of a limited liability company, which is not the case at hand). In any event, the Court had noted that "NCA Investors Trust's unjust enrichment claim suffers from a more fatal flaw: the failure to demonstrate more specifically how Merritt and Kelly were unjustly enriched." *Id.* at 24.

Second, the Court has already addressed and rejected NCA Investors Trust's argument that its interest should be afforded priority over Defendants. *Id.* In its opposition to summary judgment, NCA Investors Trust relied on three statutes—Conn. Gen. Stat. § 34-267f, 34-255d, and 34-255e—"that only came into effect on July 1, 2017, more than three years after the Upsize Guarantees, the basis for the unjust enrichment claim, were executed on March 25, 2014," and well over a year and a half after the relevant entities declared bankruptcy in December 2015. *Id.* at 23. Because the Court already held that "none of these statutes provide a basis for NCA Investors Trust's unjust enrichment claim," *id.* at 23, NCA Investors Trust bases its argument for priority of interest here on the former Conn. Gen. Stat. § 34-210, similar to Conn. Gen. Stat. § 34-267f, Pl.'s Mem. at 4-7. This argument also must fail, because § 34-210 only applies to the "winding up" of limited liability companies, not to interim distributions. *See* Conn. Gen. Stat. § 34-210 ("Upon the winding up of a limited liability company, the assets shall be distributed as follows . . ."). According to Conn. Gen. Stat. § 34-206, which was in effect during the relevant time period:

> A limited liability company is dissolved and its affairs shall be wound up upon the happening of the first to occur of the following: (1) At the time or upon the occurrence of events specified in writing in the articles of organization or operating agreement; (2) unless otherwise provided in writing in the articles of organization or operating agreement, upon the affirmative vote, approval or consent of at least a majority in interest of the members; or (3) entry of a decree of judicial dissolution under section 34-207.

Conn. Gen. Stat. § 34-206.

As this Court previously held, the relevant entities were not being wound up during the relevant time period, Ruling and Order at 23, and NCA Investors Trust has not pointed to any "controlling decisions or data that the court overlooked in the initial decision or order," D. Conn. L. Civ. R. 7(c); *see also Shrader*, 70 F.3d at 257 ("[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided."). The only other support for NCA Investors Trust's second argument is inapplicable and non-binding precedent from Montana, *see* Pl.'s Mem. at 6 (discussing *Lynes,* 168 P.3d at 651), and a Connecticut Superior Court case that did not involve unjust enrichment, *see id.* at 8 n.8 (quoting *Dealer Services Corp. v. Am. Auto Auction, Inc.*, No. NNHCV095028282S, 2013 WL 2451250, at *12 (Conn. Super. May 14, 2013)); Pl.'s Reply at 2 n.2 (same). As a result, the Court also finds unavailing the argument that UCF's interest, and thus NCA Investors Trust's interest, had priority over Defendants' with respect to the distributions, regardless of UCF's "supposed . . . security interest in 100% of the membership interests" in PSWMA and the PSW Loan. Pl.'s Mem. at 7.

As the Court noted in its Ruling and Order, *see id.* at 20, the Connecticut Supreme Court has made the standard "highly restrictive" for an indirect benefit claim of unjust enrichment:

> Although unjust enrichment typically arises from a plaintiff's direct transfer of benefits to a defendant, it also may be indirect, involving, for example, a transfer of a benefit from a third party to a defendant

9

> when the plaintiff has a superior equitable entitlement to that benefit. In an indirect benefit scenario, the plaintiff must prove that it has "a better legal or equitable right" to the disputed benefit than the defendant. This standard is "highly restrictive." It "refer[s] to a paramount interest of a kind recognized in law or equity—not to the personal merit or desert of the persons involved, or to considerations of fairness independent of preexisting entitlements." Specifically, the plaintiff must prove that its right "is both recognized, and accorded priority over the interest of the defendant, under the law of the jurisdiction."

*Geriatrics, Inc. v. McGee*, 332 Conn. 1, 25 (2019) (internal citations omitted).

The Court emphasized the need for NCA Investors Trust to "lay a foundation that will enable the trier [of fact] to make a fair and reasonable estimate." Ruling and Order at 24-25 (quoting *Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 285 (1994) (internal citation and quotation marks omitted)). And at this stage of the case, NCA Investors Trust "must come forward with specific evidence demonstrating the evidence of a genuine dispute of material fact" as to their attempt to regain all of Defendants' distributions under unjust enrichment. Ruling and Order at 25 (quoting *Robinson*, 781 F.3d at 44 (citation omitted)).

"It is well-settled that a party may move for reconsideration and obtain relief only when the defendant identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov,* 729 F.3d at 108 (quoting *Virgin Atl. Airways,* 956 F.2d at 1255). Here, NCA Investors Trust argues for the first time that the UCF Loans were in default since inception, Pl.'s Mem. at 9-11, with no citations to "controlling decisions or data that the court overlooked" in its Ruling and Order, *see* D. Conn. L. Civ. R. 7(c). *See also* Pl.'s Reply at 4-5 (attempting to analogize to a separate and non-binding decision in Connecticut Superior Court involving the Defendants and other entities not implicated in this case). The standard is clear that

"[r]econsideration is not intended for the court to reexamine a decision or the party to reframe a failed motion." *Fan*, 710 F. App'x at 24 (internal citation omitted); *see also Sankar v. City of N.Y.*, No. 07-cv-4726 (RJD) (SMG), 2012 WL 2923236, at *2 (E.D.N.Y. July 18, 2012) (denying reconsideration because the motion was "in substance and form," "an appeal; to wit, defendants argue that the Court simply came out the wrong way on each of plaintiff's claims . . . . [and] present only repetitive arguments on issues that have already been considered fully by the court" (internal citations and quotation marks omitted)).

Accordingly, because NCA Investors Trust fails to discern controlling decisions or data that the Court overlooked, *see* D. Conn. L. Civ. R. 7(c), and, at best, are "presenting the case under new theories," *Analytical Surveys, Inc.*, 684 F3d at 52 (internal citations and quotations omitted), the Court will not reconsider its earlier Ruling and Order dismissing NCA Investors Trust's breach of contract claim and limiting its unjust enrichment claim.

## IV. CONCLUSION

For the reasons explained above, the motion for reconsideration is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 21st day of January, 2020.

                                        /s/ Victor A. Bolden
                                        Victor A. Bolden
                                        United States District Judge